## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### CASE NO: 0:22-cv-60278-CMA

JOSHUA WINDHEIM, individually,
and on behalf of all others
similarly situated,

      Plaintiffs,

vs.

TIPSY JOE CORP. d/b/a
THE TIPSY BOAR GASTROPUB,
LUISA F. CASTELLANOS, individually,
and JOSE CASTELLANOS, individually,

      Defendants.

_____/

### PLAINTIFF'S *AGREED* MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, JOSHUA WINDHEIM ("Plaintiff"), hereby files this Agreed Motion for Preliminary Approval of Class Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support, as follows:

### I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants operate The Tipsy Boar Gastropub in Hollywood, Florida. Plaintiff alleges that during periods within the past 5 years Defendants employed him and other restaurant servers (hereinafter "Servers") and failed to compensate these Servers in accordance with the Florida Minimum Wage Act ("FMWA") and provisions of the Fair Labor Standards Act ("FLSA"). Plaintiff alleges three (3) separate counts for violations of the FMWA under Fed. R. Civ. P. 23: (i) Tip Credit Class; (ii) Off-the-Clock Class; and (iii) 80/20 Class. Subject to Court approval,

Plaintiff and Defendants (hereinafter "the Parties") have settled Plaintiff's claims on a class-wide common fund and claims-made basis for significant monetary relief up to $295,000.00. The proposed settlement satisfies all of the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Florida Minimum Wage Act ("FMWA"). Attached to this motion is the Declaration of Jordan Richards, Esq. (the Richards Declaration) – Plaintiff's lead counsel. *See* **Exhibit A**. The Richards Declaration provides information concerning the Joint Stipulation of Class Action Settlement Agreement and Release (attached to the Richards Declaration), and the proposed Notice of Class Action Settlement (attached to the Stipulated Class Action Settlement Agreement and Release). With this agreed motion, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Stipulated Class Action Settlement Agreement and Release ("Settlement Agreement"); (2) certify the putative class of Servers; (3) appoint the undersigned as Class Counsel; (4) preliminarily approve the class settlement and proposed Notice of Class Action Settlement ("Notice"), and direct its distribution to the class; and (5) approve the proposed schedule for final settlement approval, as outlined herein.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### a.  Factual Allegations

Individual Defendants Jose and Luisa Castellanos own and operate the Tipsy Boar Gastropub in Hollywood, Florida. Plaintiff worked for Defendants as a Server from July 2021 through October 2021. Including Plaintiff, there are approximately 60 current and former Servers who worked for Defendants and comprise the putative Rule 23 class. *See* Exhibit A. Plaintiff filed this class action lawsuit seeking to recover unpaid wages from Defendants based on violations of the Florida Minimum Wage Act ("FMWA") for failure to pay proper minimum wages to himself and other Servers at the restaurant from 2017 to the present.[1] Plaintiff alleges that during periods of his employment, he and other servers were not properly notified that Defendants would be taking a tip credit toward the mandated Florida minimum wage, were not always compensated the appropriate Florida reduced wage in order for Defendants to take a $3.02 tip credit against the

---

[1] Plaintiff's operative complaint also alleges that servers were required to spend more than 20% of their shifts performing non-tipped duties and were not properly compensated the applicable minimum wages for time spent performing this non-tipped work, and that other off-the-clock work was performed without appropriate compensation.

applicable mandated state minimum wage, were not allowed to keep all tips they earned by virtue of alleged unlawful tip distribution policy in the restaurant that allowed managers to receive portions of tips, and were required to work certain hours off-the-clock at various times at Tipsy Boar. Plaintiff alleges that Defendants are jointly-and-severally liable to him and a class of similarly situated Servers for an amount equal to the $3.02 tip credit for each hour they worked at the restaurant. Plaintiff, on an individual basis, also alleges that Defendants violated the FLSA's overtime provisions by requiring him to work in excess of 40 hours in one or more workweeks without paying him the appropriate overtime premium for those hours.

This lawsuit has been pending since February 2022. *See* D.E. 1. Although this settlement has been reached at a relatively early procedural posture, Defendants have asserted a number of defenses in their Answer to the Amended Complaint and the Parties have engaged in formal discovery. *See* Exhibit A. Plaintiff has taken the depositions of certain employees who worked for Defendants during the relevant time period, and Defendants have provided verified answers to interrogatories along with production of hundreds of relevant documents in this case. While Defendants are willing to fully resolve these claims on a class-wide basis, Defendants maintain that no violations of law were committed, and if any such violations were committed, they were non-willful or inadvertent. The Parties also continue to disagree about the viability of class certification, and the scope, type, and amount of damages each Server would be entitled to receive (if any), even if Plaintiffs were ultimately to prevail in the case. Defendants assert that they always complied with applicable Florida and federal law, always paid their employees in accordance with applicable law, and relied upon the assistance and advice of their third-party payroll company to handle payroll matters, including, but not limited to complying with federal and Florida wage law.

### b. Procedural History

Plaintiff commenced this lawsuit by filing his Class Action Complaint for Damages and Demand for Jury Trial on February 5, 2022. *See* D.E. 1. Plaintiff thereafter filed an Amended Class Action Complaint for Damages and Demand for Jury Trial ("Amended Complaint") on February 14, 2022, and a subsequent Second Amended Class Action Complaint ("SAC") on April 11, 2022. *See* D.E. 12; D.E. 37. Defendants filed their Answer and Affirmative Defenses to the SAC on April 25, 2022. *See* D.E. 38. After the filing of the initial Complaint the Defendants took efforts to attempt to cure alleged violations addressed by this lawsuit. For example, Defendants audited their own payroll records and determined that certain employees were not compensated the appropriate

reduced wage under Florida law. Defendants provided checks to certain employees in February 2022, but did not seek approval from the Court or from the Department of Labor concerning these payments.[2] Plaintiff has maintained that these payments were insufficient to resolve the claims asserted against Defendants, and only provided a portion of relief actually owed to the putative class. The Parties have been engaged in extensive detailed discussions regarding resolution of this matter on a class-wide basis, and ultimately agreed to proceed with class settlement discussions after attending an unsuccessful Court-ordered settlement conference with Magistrate Judge Strauss on March 21, 2022. *See* D.E. 28; *see, also,* **Exhibit A**. To date, hundreds of pages of documents have been exchanged by the Parties, including payroll reports, employee rosters, restaurant policies, and other relevant information concerning the claims alleged in this case. *See* **Exhibit A**. Plaintiff's counsel has conducted their own independent investigation into claims, including an independent evaluation of the number of Servers employed by Defendants during the relevant time period. *See* **Exhibit A**. After reaching an impasse at the settlement conference with Magistrate Judge Strauss, the Plaintiff propounded written discovery and took depositions of certain employees. *Id.* On the eve of the Corporate Representative's deposition the Defendants agreed to enter into a class-wide resolution to fully resolve the claims in this lawsuit and provide a common fund that will allow servers to participate in a claims process and receive significant and meaningful compensation to be administered by a third-party Claims Administrator.

### c.  Discovery

The Parties both propounded written discovery in this case and Defendants produced over 300 pages of documents concerning the payroll records kept and maintained by Defendants during the relevant time period. On May 5, 2022, Plaintiff deposed multiple individuals employed by Defendants who provided relevant information concerning various practices in the restaurant. Plaintiff has been given an opportunity to review and evaluate Tipsy Boar's corporate policies, payroll records, server rosters, side work assignments, internal records pertaining to shifts worked by the servers, and work schedules. In addition, Plaintiff's counsel conducted an extensive interview with Plaintiff concerning the veracity of these documents and comparing the documentation to information kept and maintained by Plaintiff during the course of his

---

[2] Pursuant to <u>United States v. Lynn's Foods Stores, Inc.</u>, an employer is required to obtain approval from the DOL or the district court because it can obtain a valid and effective release of any claim for back wages under the FLSA.

employment. *See* **Exhibit A**. Plaintiff has also compared the documentation produced by Defendants to publicly available information including restaurant reviews (which provide the names of certain servers), and social media posts (which also identify certain servers).

### d.   Settlement Negotiations

On March 21, 2022, the Parties attended a settlement conference via Zoom with Magistrate Judge Jared Strauss. *See* D.E. 28. During that settlement conference, the Parties did not resolve the claims, but were able to make some progress concerning the scope and viability of certain claims in this case. Following the settlement conference, the Parties engaged in discovery prior to revisiting resolution discussions. *See* Exhibit A. Ultimately, the Parties have engaged in a total of over 24 hours of negotiations in this case. After lengthy and additional negotiation and further phone conferences, the Parties have now reduced their agreement to a formal Stipulation of Class Action Settlement Agreement and Release, which they are now presenting to the Court for preliminary approval. *See* Joint Stipulation of Class Action Settlement Agreement and Release attached to Exhibit A as Exhibit 1.

### III.   SUMMARY OF THE SETTLEMENT TERMS

#### a.   The Settlement Fund

Defendants have agreed to create a settlement fund of up to $295,000.00 (hereinafter "the Fund"). *See* Settlement Agreement attached to **Exhibit A**. The Fund will cover awards to class members, Court-approved attorney's fees and costs, Court-approved consideration payments to Plaintiff for resolution of his non-FMWA claims and for entering a mutual general release with Defendants, and the costs of administering the settlement. *Id.*

#### b.   Release

Class Members who do not opt out of the settlement will release all Florida minimum wage claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *Id.*

#### c.   Eligible Class Members

The Rule 23 class consists of approximately 60 current and former Servers who performed work for Defendants at any time between February 5, 2017, and the date of preliminary approval, except for those who opt out. *Id.*

#### d.   Allocation Formula

Class members who timely submit claim forms, will be paid pursuant to an allocation formula based on the period of time they worked for Defendants during the applicable limitations period, and specifically, the number of weeks they performed work as a Server within the class period. *Id.* An IRS Form W2 shall be issued by the appropriate Defendant to Plaintiff and to each Class Member to whom compensation is found to be owed pursuant to the settlement terms, as applicable under IRS regulations. *Id.* Pursuant to the allocation formula, Rule 23 class members will receive a minimum of $25.00 if they performed one week of work, and a maximum of $2,500.00 if they performed 256 weeks of work or more within the class period. *See* Settlement Agreement. The claims administrator will credit Defendants for any proof of payments they issued to any class member in February 2022. *Id.*

"Claims-made settlements have been found to be fair, reasonable, and, in fact, more than adequate in class action litigation." *See, e.g.,* Williams v. Reckitt Benckiser LLC, 2021 WL 8129371 at *20 (S.D. Fla. Dec. 15, 2021) (Goodman, J.) *citing* Hall, 2014 WL 7184039 at *6 ("There is nothing inherently suspect about requiring class members to submit claims forms in order to receive payment"); Hamilton v. SunTrust Mortg., Inc., 2014 WL 5419507 at *6 (S.D. Fla. 2014) ("Filing a claim form is a 'reasonable administrative requirement' which generally does not impose an undue burden on members of a settlement class"). The Eleventh Circuit Court of Appeals has affirmed claims-made settlements affording less relief to class members than that afforded here. *See, e.g.,* Poertner v. Gillette Co., 618 F. App'x 624 (11th Cir. 2015) (affirming approval of claims-made settlement offering class members between six and twelve dollars for filing a claim, as well as injunctive relief).

### e.   Attorney's Fees and Litigation Costs

Plaintiff's counsel will apply for approximately one-third (33.33333%) of the Fund as attorney's fees ($98,333.33) and reimbursable costs as well in the amount of $2,500.00.[3] Plaintiff's

---

[3] This is within the range of a typical fee award in a common fund case. *See, e.g.,* Seghroughni v. Advantus Rest., Inc., 2015 WL 2255278 at *1 (M.D. Fla. 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases"); Wolff v. Cash 4 Titles, 2012 WL 5290155 at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered a standard in a contingency fee agreement"); Willix v. Healthfirst, Inc., 2011 WL 754862 at *7 (E.D.N.Y. 2011) ("Class Counsel's request 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…'"); Hosier v. Mattress Firm, Inc., 2012 WL 2813960 at *4 (M.D. Fla. 2012) (approving a common

counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not conditioned on the award of attorney's fees, and explicitly states that it is to be considered separately from any application for attorney's fees. *See* **Exhibit A**. The Court need not decide the attorney's fees and costs issue now, with respect to the Rule 23 Class Settlement.

### f. Consideration for Plaintiff's Non-FMWA Claims and Mutual General Release

In addition to his award under the allocation formula as a member of the putative class, Plaintiff will also receive payment in the amount of $12,500.00 to resolve his FLSA overtime claims and for a mutual general release ($3,000.00 to represent unpaid overtime wages, $3,000.00 to represent liquidated damages in connection to the overtime claim, and $6,500.00 as consideration for the mutual general release). *See* **Exhibit A, at Ex. 1**. Separate consideration paid to a class representative from the common fund in exchange for executing a general release is permissible under a Rule 23 analysis. *See, e.g.,* <u>Teahl v. Lazy Flamingo, Inc.</u>, 2016 WL 4942067 (M.D. Fla. 2016) (Approving additional payment to class representative in FMWA class action settlement from the common fund in exchange for class representative's execution of a general release).

### IV.   CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlements may be presented.

---

fund FLSA settlement which provided 30% of the common fund for attorney's fees and costs); <u>Morefield v. NoteWorld, LLC</u>, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as attorney's fees); <u>Atkinson v. Wal-Mart Stores, Inc.</u>, 2011 WL 6846747 at *6 (M.D. Fla. 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees).

*See* Fed. R. Civ. P. 23(e); *See, also,* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions ("Newberg")* 11.22 eq. seq. (4th ed. 2002); <u>Saccoccio v. JP Morgan Chase Bank, N.A.</u>, 297 F.R.D. 683, 688 (S.D. Fla. 2014) (discussing steps). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

      With this motion, Plaintiff respectfully requests that the Court take the first step – granting preliminary approval of the Settlement Agreement and approving the proposed Notice and authorizing the claims administrator to send it. The parties respectfully submit for the Court's approval the following schedule for final resolution of this matter:

      1.    Within 15 calendar days of the Court granting preliminary approval, the Defendants will provide the Claims Administrator with the full legal names and contact information for all class members. *See* Settlement Agreement at **Exhibit A**.

      2.    Within 15 calendar days thereafter, the Claims Administrator will mail the Notice to class members at their last known address. *See* Settlement Agreement at Exhibit A.

      3.    Class members will have 60 calendar days after the date the Notice is mailed to opt out or object to the settlement ("Notice Period"). *Id.*

      4.    A final fairness hearing will be held as soon as is convenient for the Court.

      5.    Plaintiff will file a Motion for Final Settlement Approval no later than 14 days before the fairness hearing.

      6.    Plaintiff will contemporaneously file a Motion for Approval of Attorney's Fees and Costs when the Motion for Final Settlement Approval is filed.

      7.    After the fairness hearing, if the Court grants the Plaintiff's Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 30 days after the Court enters its Final Order and Judgment. *See* Settlement Agreement.

      8.    If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired. *Id.*

      9.    The Claims Administrator shall pay the total amount of the Class Counsel's fees and the costs to Class Counsel, by no later than fourteen (14) days after the Effective Date. *Id.*

10.     The Claims Administrator will pay Qualified Class Members their portion of the Net Settlement Fund, as described in the Settlement Agreement within thirty (30) calendar days after the Effective Date. *Id.*

11.     Amounts allocated to any Class Member who does not make a valid claim, or who elects to opt-out of the settlement, shall be retained by and revert back to the Defendants.[4] *Id.*

## V.     Rule 23 Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving debts and uncertainties and preventing lawsuits." *See, e.g.,* In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1105 (5th Cir. 1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed. R. Civ. P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair and adequate. *See, e.g.,* In Re Checking Account Overdraft Litig., 2011 WL 5873389 at *6 (S.D. Fla. 2011); Fed. R. Civ. P. 23(e)(2), (e)(1).

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g.,* Morefield v. NoteWorld, LLC, 2012 WL 1355573 at *2 (S.D. Ga. 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[5] Thus, the Court should certify the settlement class.

---

[4] Claims-made class action settlements are frequently approved, even if unclaimed funds revert back to defendants. *See* Williams, 2021 WL 8129371 at *35 *citing* Casey v. Citibank, No. 12-cv-820 (N.D.N.Y.) (ECF No. 222 at 6); Lemus v. H & R Block Enters. LLC, 2012 WL 3638550 (N.D. Cal. 2012) (approving, over objections, claims-made settlement in wage case where unclaimed funds reverted to the defendants); Atkinson v. Wal-Mart Stores, Inc., 2011 WL 6846747 at *5 (M.D. Fla. 2011) (approving claims-made settlement with full revision in class action case).

[5] Federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g.,* Kubiak v. S.W. Cowboy, Inc., 2014 WL 2625181 (M.D. Fla. 2014) (certifying opt-out Rule 23 class for FMWA claims); Lopez v. Hayes Robertson Group, Inc., 2013 WL 10561294 (S.D. Fla. 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); Garcia-Celestino v. Ruiz Harvesting, Inc., 280 F.R.D. 640 (M.D. Fla. 2012) (certifying Florida state wage and hour claims); Rosario-Guerro v. Orange Blossom Harvesting, 265 F.R.D. 619 (M.D. Fla. 2010) (same); Napoles-Arcila v. Pero Family Farms, LLC, 2009 WL 1585970 (S.D. Fla. 2009) (same); Mesa v. Ag-Mart Produce, Inc., 2008 WL 2790224 (M.D. Fla. 2008) (same). Class certification is appropriate even in cases where certification of an opt-in collective action is denied.

### a. Numerosity

Here, there are approximately 60 members of the proposed settlement class of Servers. For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met. *See* Kilgo v. Bowman Trans., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members); Seghroughni v. Advantus Restaurant, Inc., 2015 WL 390329 (M.D. Fla. 2015) (numerosity satisfied based on 87 class members).

### b. Commonality

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *See, e.g.,* Williams v. Mohawk Industries, Inc., 568 F.3d 1350, 1355 (11th Cir. 2009); Fabricant v. Sears Roebuck, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices relating to whether the proper notice and amounts related to the reduced Florida wage was paid to Servers – an issue that is common to the entire Settlement Class.

### c. Typicality

The Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pray policies and practices of Defendants, arise from the same legal theories, and allege the same type of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See, e.g.,* Komberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984 (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### d. Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See* Fabricant, 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the settlement class, and Plaintiff has retained competent counsel to represent him and the settlement class. Class Counsel here regularly engages in wage and hour class litigation in several states across the country

and other complex litigation similar to the present Litigation and have dedicated substantial resources to the prosecution of the Action. *See* **Exhibit A**. Further information concerning Class Counsel's credentials can be found in the Richards Declaration attached hereto. *Id.* Moreover, the Plaintiff and Class Counsel have vigorously and competently represent the settlement Class Members' interests in the Litigation and have obtained a resolution that benefits all members of the putative class. *See* <u>Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan</u>, 221 F.3d 1235, 1253 (11th Cir. 2000).

### e. Predominance and Superiority

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 60 settlement Class Members in a single, coordinated proceeding is superior to 60 individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law… ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolivng the claim or claims of each class member." *See, e.g.,* <u>Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,</u> 601 F.3d 1159, 1170 (11th Cir. 2010). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment. *See* <u>In re Checking Account Overdraft Litig.</u>, 2012 WL 4173458 at *3 (S.D. Fla. 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class. Thus, the Court should preliminarily certify the settlement class.

### VI.   <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

The law favors compromise and settlement of class action lawsuits. *See, e.g.,* <u>In re U.S. Oil & Gas Litig.</u>, 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits"); Newberg 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See* <u>Leverso v. SouthTrust Bank of Ala.</u>, 18 F.3d 1531 (11th Cir. 1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *See, e.g.,* <u>Torres v. Gristede's Operating Corp.</u>, 2010 WL 2572937 at *2 (S.D.N.Y. 2010).

At the preliminary approval stage, the Court's task is to evaluate whether the settlement is within the "range of reasonableness." 4 Newberg 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *See, e.g.,* Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149 at *2 (S.D. Fla. 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manural for Complex Litigation,* Third 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* 11.25. A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval', or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *See, e.g.,* Fresco v. Auto Data Direct, Inc., 2007 WL 2330895 at *5 (S.D. Fla. 2007) *quoting* Armstrong v. Board of School Directors, 616 F.2d 305, 312 (7th Cir. 1980); *Newberg* 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness… and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); Danieli v. IBM, 2009 WL 6583144 at *4 (S.D.N.Y. 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both terms of the settlement agreement and the negotiating process that led to such agreement." *See, e.g.,* Frank v. Eastman Kodak Co., 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116. "A court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." Canupp v. Liberty Behavioral Healthcare, Corp., 447 2011 WL 6003986 (11th Cir. 2011) *quoting* Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977).

The first step in the settlement process simply allows notice to issue to the class and for class members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

### a.   The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in <u>Bennett v. Behring Corp.</u>, 737 F.2d 982, 986 (11th Cir. 1984). Although the Court need not evaluate the <u>Bennett</u> factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The <u>Bennett</u> factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the <u>Bennett</u> factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval of the class action settlement.

### i.      Likelihood of Success at Trial

Although Plaintiff is confident that his case is very strong, it is not without risk. "Litigation inherently involves risks." *See* <u>In re Painewebber Ltd. P'ships Litig.</u>, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." <u>In re Ira Haupt & Co.</u>, 304 F.Supp. 917, 934 (S.D.N.Y. 1969); *see, also,* <u>Velez v. Majik Cleaning Serv., Inc.</u>, 2007 WL 7232783 at *6 (S.D.N.Y. 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." <u>In re Austrain & German Bank Holocaust Litig.</u>, 80 F.Supp.2d at 356.

A trial on the merits would involve significant risk as to both liability and damages, as Defendants have asserted substantive and procedural defenses. For example, although Plaintiff is confident he could show that Defendants were liable for violating federal and/or Florida law, Defendants assert that they were always in compliance with federal and/or Florida law and that any non-compliance is solely attributable to their third-party payroll company or non-willful technical violations. If successful, a jury could have determined that Defendants were not responsible for the wage violations at issue.

13

Defendants steadfastly argue that no violations were committed during the relevant time period. *See* D.E. 38. Defendants claim that in the event any such violations did occur, they were inadvertent and not willful. *Id.* Defendants also assert various theories of waiver, estoppel, and/or set-off as to Plaintiff and the putative class' claims. *Id.* Defendants always maintained that they were permitted to take a tip credit toward the minimum wage requirements under Florida law and that they complied with any notice requirements thereto. *Id.* While Plaintiff believes he ultimately would have defeated each of the aforementioned arguments, this would require significant factual development and favorable outcomes at trial and on appeal (potentially), regarding various issues, all of which are inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of preliminary approval.

### ii. Range of Possible Recovery and Range at Which Settlement is Fair

The relief sought in the settlement is reasonable and within the range of remedies permitted by law. Because "monetary relief is difficult to quantify, in evaluating a class settlement, the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *See, e.g.,* Williams, 2021 WL 8129371 at *34. "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail." *See* Waters v. Cook's Pest Control, Inc., 2012 WL 2923542 at *13 (N.D. Ala. 2012); *see, also,* Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery"); In re: Newbridge Networks Securities Litig., 1998 WL 765724 at 82 (D.D.C. 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery… seems to be within the targeted range of reasonableness").

Under Florida law, and the theories advanced in this case, the maximum amount each member of the putative class could recover is $3.02 per hour for each hour worked. Under the settlement, each Server is receiving a substantial portion of their alleged wage deficiencies under the FMWA. When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action. The Net Settlement Fund allows Plaintiff and members of the putative class to receive approximately $25 for each week they worked while employed by Defendants. *See* Exhibit A. Under this calculation formula, the Servers will receive approximately $1.00 for each hour they worked in a 25-hour workweek

with a maximum recovery limit amount of $2,500.00 for each Server. *See* Exhibit A. This guaranteed compensation is approximately 1/3 (33.333%) of the damages the Servers *may* have recovered if the class ultimately prevailed at trial. This "middle of the road" recovery is fair and reasonable under the circumstances and should be approved by the Court. *See, e.g.,* Fata v. Pizza Hut of America, Inc., 2016 WL 7130932 (M.D. Fla. 2016) (Preliminarily approving Rule 23 class settlement where delivery drivers were to each to receive a total between $492.00 and $1,352.00 in unpaid wages); *see, also,* Bennett, 737 F.2d at 986 (holding that 5.6% recovery was fair and adequate in view of risks of further litigation and litigation objectives); In re Checking Account Overdraft Litig., 830 F.Supp.2d at 1346 ("Standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims"); Lipuma, 406 F.Supp.2d at 1322-23 (finding that settlement recovery of 8.1% of possible damages was fair, adequate, and reasonable).

### iii.   Litigation Through Trial Would be Complex, Costly, and Long

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recover for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *See* In re Austrain & German Bank Holocaust Litig., 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000). This case is no exception, with approximately 60 Rule 23 class members and claims under and state law.

Although there has already been some discovery and depositions taken, additional discovery would be required to establish liability and damages, including several depositions of class members and Defendants, and Defendants' additional employees and managers. Further, Defendants would have likely opposed certification of the Rule 23 class had the matter not resolved, and sought to decertify same, even in the event that the Court ultimately certified a Rule 23 class. In addition, the Parties likely would have filed cross-motions for summary judgment on legal issues regarding the issues in this case, as well as defenses asserted in the Answer. If the Court denied the motions, a fact-intensive trial would be necessary to determine whether Plaintiffs were owed wages under Florida and/or federal law. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Given the unsettled nature of the law at issue in the case, any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes

monetary relief available to Class Members in a prompt and efficient manner. Therefore, the third <u>Bennett</u> factor weighs in favor of preliminary approval.

### iv.   Reaction to the Settlement Has Been Positive

Although notice of the settlement has not yet issued to the class, the Plaintiff has expressed his strong approval of the settlement. Moreover, the undersigned counsel expects that other Servers at the restaurant will express approval over the proposed terms of the class settlement in light of the amounts that will be recoverable from the Fund. After notice issues and Class Members have had an opportunity to weigh in, the Court can more fully analyze this factor.

### v.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly

The parties have completed enough discovery to recommend settlement. The proper question at this stage is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *See* <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 537 (3rd Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement… but an aggressive effort to ferret out facts helpful to the prosecution of the suit." <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F.Supp.2d at 176. The parties' discovery here meets this standard. As discussed above, Defendants produced voluminous documents pertaining to their policies, payroll records, and workweek information, as well as employee rosters. *See* Exhibit A. In addition, Plaintiff's counsel has conducted audits concerning the number of Servers employed by Tipsy Boar since February 5, 2017, and has been able to cross-reference documentation produced by Defendants in this case concerning the size and scope of the putative class. Plaintiff also obtained testimony from employees currently employed by Defendants, that in Plaintiff's evaluation, would support a finding of liability in this case. *See* Exhibit A.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case. *See* <u>Frank</u>, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see, also,* <u>Khait</u>, 2010 WL 2025106 at *4-5 (approving settlement where the parties exchanged payroll and time data and policies and procedures). This factor also weighs in favor of preliminary approval.

16

## VII.   PROPOSED NOTICES ARE APPROPRIATE

The contents of the proposed Notice, which is attached to the Richards Declaration vis-à-vis the Stipulated Class Action Settlement Agreement, fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. *See* Exhibit A. The Notice also explains the allocation formula, the basis on which each Class Member's award was determined, and the allocation of attorney's fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Claims Administrator, Simpluris, will e-mail **and** mail the Notices to the last known address of each class member within 30 calendar days of the Court's preliminary approval order. *See* **Exhibit A**. The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom notices are returned as undeliverable. *Id.* Class Members will have forty (40) calendar days to opt out of or object to the settlement. *Id.* Within thirty (30) calendar days of the Effective Date of the settlement, the Claims Administrator will mail Class Members their payments. *Id.*

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiff's counsel, USA Employment Lawyers – Jordan Richards PLLC, and Jordan Richards, Esq. as Class Counsel, approve the Settlement Notice, and enter the Proposed Order attached hereto.

Plaintiff, JOSHUA WINDHEIM, now moves this Court to certify the following class of similarly situated servers: classes of similarly situated servers:

**All Servers who worked for Defendants at Tipsy Boar Gastropub in Hollywood, Florida, between February 5, 2017, and [Preliminary Approval].**

Plaintiff further requests that the Court enter an order consistent with the Proposed Preliminary Order attached hereto and grant the full relief sough within this agreed Motion.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to S.D. Fla. L.R. 7.1(a)(3), prior to the filing of the instant motion, the Parties conferred and agree as to the relief sought herein.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS - JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
(954) 871-0050
*Counsel for Plaintiffs*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
*jordan@jordanrichardspllc.com*
*jake@jordanrichardspllc.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 1st day of August 2022 and served on the counsel listed below.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST

**SCOTT MAGER, ESQ.**
Florida Bar No. 768502
2719 Hollywood Blvd. 2nd Floor
Hollywood, Florida 33020
brian@mpjustice.com
scott@mpjustice.com
*Counsel for Defendants*