**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO: 0:22-cv-60278-CMA**

JOSHUA WINDHEIM, individually,
and on behalf of all others
similarly situated,

       Plaintiffs,

vs.

TIPSY JOE CORP. d/b/a
THE TIPSY BOAR GASTROPUB,
LUISA F. CASTELLANOS, individually,
and JOSE CASTELLANOS, individually,

       Defendants.

_____/

**PLAINTIFF'S *AGREED* MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, JOSHUA WINDHEIM ("Plaintiff"), hereby files this *Agreed* Motion for Final Approval of Class Settlement and Incorporated Memorandum of Law, as follows:

I.      **BACKGROUND**

Defendants operate The Tipsy Boar Gastropub in Hollywood, Florida. Plaintiff alleges that during periods within the past 5 years Defendants employed him and other restaurant servers (hereinafter "Servers") and failed to compensate these Servers in accordance with the Florida Minimum Wage Act ("FMWA") and provisions of the Fair Labor Standards Act ("FLSA"). Plaintiff alleges three (3) separate counts for violations of the FMWA under Fed. R. Civ. P. 23: (i) Tip Credit Class; (ii) Tip Pool Class; and (iii) Off-the-Clock Class. *See* D.E. 37. On August 3, 2022, the Court preliminarily approved a class settlement which created a common fund of $295,000.00 to be distributed on a claims-made basis to members of the class. *See* D.E. 49. The Notice period has now expired, and the settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Florida Minimum Wage Act ("FMWA"). Attached to this motion is Class Counsel's declaration (the "Richards Declaration") and the Declaration of Denise Islas Regarding Notice and

Settlement Administration (the "Islas Declaration") submitted on behalf of Simpluris – the approved Claims Administrator in this case. *See* Richards Declaration at **Exhibit A;** *see, also,* Islas Declaration at **Exhibit B**. The Richards Declaration provides information concerning the Notice Period, Participation Rates Amongst the Class, and other information supporting the final approval of this settlement. The Islas Declaration provides information concerning the administration of the claims period including, but not limited to, the number of claims submitted, number of opt-outs submitted, number of objections, and the average settlement share. With this agreed motion, Plaintiff respectfully requests that the Court: (1) grant final approval of the Stipulated Class Action Settlement Agreement and Release ("Settlement Agreement"); (2) certify the class of Servers; (3) approve the distribution of settlement payments to qualified members of the class; (4) approve the $5,000.00 payment to Simpluris for administration of the class settlement; (5) approve the $12,500.00 non-FMWA consideration payable to Plaintiff; and (6) approve the distribution of court-approved attorney's fees and costs for class counsel.[1]

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

a.  **Factual Allegations**

Individual Defendants Jose and Luisa Castellanos own and operate the Tipsy Boar Gastropub in Hollywood, Florida. Plaintiff worked for Defendants as a Server from July 2021 through October 2021. Including Plaintiff, there are a total of 58 current and former Servers who worked for Defendants and comprise the putative Rule 23 class. *See* **Exhibit A**. Plaintiff filed this class action lawsuit seeking to recover unpaid wages from Defendants based on violations of the Florida Minimum Wage Act ("FMWA") for failure to pay proper minimum wages to himself and other Servers at the restaurant from 2017 to the present. Plaintiff alleges that during periods of his employment, he and other servers were not properly notified that Defendants would be taking a tip credit toward the mandated Florida minimum wage, were not always compensated the appropriate Florida reduced wage in order for Defendants to take a $3.02 tip credit against the applicable mandated state minimum wage, were not allowed to keep all tips they earned by virtue of alleged unlawful tip distribution policy in the restaurant that allowed managers to receive portions of tips, and were required to work certain hours off-the-clock at various times at Tipsy

---

[1] Class Counsel has contemporaneously filed an *Unopposed* Motion for Approval of Attorney's Fees and Reimbursement of Expenses and Incorporated Memorandum of Law in Support.

2

Boar. *See* D.E. 37. Plaintiff alleges that Defendants are jointly-and-severally liable to him and a class of similarly situated Servers for an amount equal to the $3.02 tip credit for each hour they worked at the restaurant. Plaintiff, on an individual basis, also alleges that Defendants violated the FLSA's overtime provisions by requiring him to work in excess of 40 hours in one or more workweeks without paying him the appropriate overtime premium for those hours.

This lawsuit has been pending since February 2022. *See* D.E. 1. Although this settlement has been reached at a relatively early procedural posture, Class Counsel conducted a thorough pre-suit investigation, conferred with Defense Counsel prior to filing suit, engaged in significant discovery (including written discovery and multiple depositions), and attended an early settlement conference with Magistrate Judge Jared Strauss. *See* **Exhibit A**. Defendants asserted a number of defenses in their Answer to the Amended Complaint and vigorously defended against every claim asserted by Plaintiff. *See* **Exhibit A**. Defendants maintain that no violations of law were ever committed, and if any such violations were committed, they were non-willful or inadvertent. The issues of class certification, and the scope, type, and amount of damages each Server would be entitled to receive (if any), were hotly contested by the Parties throughout the litigation.

### b.  Procedural History

Plaintiff commenced this lawsuit by filing his Class Action Complaint for Damages and Demand for Jury Trial on February 5, 2022. *See* D.E. 1. Plaintiff thereafter filed an Amended Class Action Complaint for Damages and Demand for Jury Trial ("Amended Complaint") on February 14, 2022, and a subsequent Second Amended Class Action Complaint ("SAC") on April 11, 2022. *See* D.E. 12; D.E. 37. Defendants filed their Answer and Affirmative Defenses to the SAC on April 25, 2022. *See* D.E. 38. After the filing of the initial Complaint the Defendants took efforts to attempt to cure alleged violations addressed by this lawsuit. For example, Defendants audited their own payroll records and determined that certain employees were not compensated the appropriate reduced wage under Florida law. Defendants provided checks to certain employees in February 2022, but did not seek approval from the Court or from the Department of Labor concerning these payments.[2] Plaintiff has maintained that these payments were insufficient to resolve the claims asserted against Defendants, and only provided a portion of relief actually owed to the putative

---

[2] Pursuant to United States v. Lynn's Foods Stores, Inc., an employer is required to obtain approval from the DOL or the district court because it can obtain a valid and effective release of any claim for back wages under the FLSA.

class. The Parties have been engaged in extensive detailed discussions regarding resolution of this matter on a class-wide basis, and ultimately agreed to proceed with class settlement discussions after attending an unsuccessful Court-ordered settlement conference with Magistrate Judge Strauss on March 21, 2022. *See* D.E. 28; *see, also,* **Exhibit A**. To date, hundreds of pages of documents have been exchanged by the Parties, including payroll reports, employee rosters, restaurant policies, and other relevant information concerning the claims alleged in this case. *See* **Exhibit A**. Plaintiff's counsel has conducted their own independent investigation into claims, including an independent evaluation of the number of Servers employed by Defendants during the relevant time period. *See* **Exhibit A**. After reaching an impasse at the settlement conference with Magistrate Judge Strauss, the Plaintiff propounded written discovery and took depositions of certain employees. *Id.* On the eve of the Corporate Representative's deposition the Defendants agreed to enter into a class-wide resolution to fully resolve the claims in this lawsuit and provide a common fund that will allow servers to participate in a claims process and receive significant and meaningful compensation to be administered by a third-party Claims Administrator.

      **c.   Discovery**

      The Parties both propounded written discovery in this case and Defendants produced over 300 pages of documents concerning the payroll records kept and maintained by Defendants during the relevant time period. On May 5, 2022, Plaintiff deposed multiple individuals employed by Defendants who provided relevant information concerning various practices in the restaurant. Plaintiff has been given an opportunity to review and evaluate Tipsy Boar's corporate policies, payroll records, server rosters, side work assignments, internal records pertaining to shifts worked by the servers, and work schedules. In addition, Plaintiff's counsel conducted an extensive interview with Plaintiff concerning the veracity of these documents and comparing the documentation to information kept and maintained by Plaintiff during the course of his employment. *See* **Exhibit A**. Plaintiff has also compared the documentation produced by Defendants to publicly available information including restaurant reviews (which provide the names of certain servers), and social media posts (which also identify certain servers).

      **d.   Settlement Negotiations**

      Prior to filing suit Plaintiff sent a pre-suit notice to Defendants pursuant to Fla. Stat. § 448.110(6) in connection to the class-wide FMWA claims. *See* **Exhibit A**. Defendants did not tender full payment for the settlement class to resolve the FMWA claims. After the case was filed,

on March 21, 2022, the Parties attended a settlement conference via Zoom with Magistrate Judge Jared Strauss. *See* D.E. 28. During that settlement conference, the Parties did not resolve the claims, but were able to make some progress concerning the scope and viability of certain claims in this case. Following the settlement conference, the Parties engaged in discovery prior to revisiting resolution discussions. *See* **Exhibit A**. Ultimately, the Parties have engaged in a total of over 24 hours of negotiations in this case which spanned the course of several days. After lengthy and additional negotiation and further phone conferences, the Parties entered into a formal Stipulation of Class Action Settlement Agreement and Release which was preliminarily approved by the Court. *See* D.E. 48-1.

### III.   SUMMARY OF THE SETTLEMENT TERMS

#### a.   The Settlement Fund

Defendants have created a settlement fund of up to $295,000.00 (hereinafter "the Fund"). *See* Settlement Agreement at D.E. 48-1. The Fund covers awards to class members, Court-approved attorney's fees and costs, Court-approved consideration payments to Plaintiff for resolution of his non-FMWA claims and for entering a mutual general release with Defendants, and the costs of administering the settlement. *Id*.

#### b.   Settlement Class Release

Class Members who did not opt out of the settlement are releasing all Florida Minimum Wage Act ("FMWA") claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *Id*. The Settlement Class Release is narrow and applies only to claims that could have been asserted under the FMWA. No class member (other than the Class Representative) has waived any federal overtime wage claims under the Fair Labor Standards Act ("FSLA"). Plaintiff is receiving additional consideration in exchange for the general release he has entered with Defendants.

#### c.   Eligible Class Members

The Rule 23 class consists of 58 current and former Servers who performed work for Defendants at any time between February 5, 2017, and August 2, 2022. *Id.* Only one (1) class member opted out of the settlement during the Notice Period. *See* **Exhibit A**; *see, also,* **Exhibit B.**

#### d.   Allocation Formula

Class members who timely submitted claim forms, will be paid pursuant to an allocation formula based on the period of time they worked for Defendants during the applicable limitations

period, and specifically, the number of weeks they performed work as a Server within the class period. *Id.* An IRS Form W2 shall be issued by the appropriate Defendant to Plaintiff and to each Class Member to whom compensation is found to be owed pursuant to the settlement terms, as applicable under IRS regulations. *Id.* Pursuant to the allocation formula, Rule 23 class members will receive a minimum of $25.00 if they performed one week of work, and a maximum of $2,500.00 if they performed 256 weeks of work or more within the class period. *See* Settlement Agreement. The claims administrator will credit Defendants for any proof of payments they issued to any class member in February 2022. *Id.*

According to the Claims Administrator, a total of eight (8) valid claims will be paid. *See* **Exhibit B** at ¶ 10. The highest individual settlement share payable to a class member is currently estimated to be approximately $1,600.00 and the average individual settlement share is currently estimated to approximately $629.70. *See* **Exhibit B** at ¶ 13.

"Claims-made settlements have been found to be fair, reasonable, and, in fact, more than adequate in class action litigation." *See, e.g.,* Williams v. Reckitt Benckiser LLC, 2021 WL 8129371 at *20 (S.D. Fla. Dec. 15, 2021) (Goodman, J.) *citing* Hall, 2014 WL 7184039 at *6 ("There is nothing inherently suspect about requiring class members to submit claims forms in order to receive payment"); Hamilton v. SunTrust Mortg., Inc., 2014 WL 5419507 at *6 (S.D. Fla. 2014) ("Filing a claim form is a 'reasonable administrative requirement' which generally does not impose an undue burden on members of a settlement class"). The Eleventh Circuit Court of Appeals has affirmed claims-made settlements affording *less relief* to class members than that afforded here [emphasis added]. *See, e.g.,* Poertner v. Gillette Co., 618 F. App'x 624 (11ᵗʰ Cir. 2015) (affirming approval of claims-made settlement offering class members between six and twelve dollars for filing a claim, as well as injunctive relief).

### e.   Attorney's Fees and Litigation Costs

Class counsel has contemporaneously filed a motion seeking approximately one-third (33.3333333%) of the Fund as attorney's fees ($98,333.33) and reimbursable costs as well in the amount of $2,500.00.[3] *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not

---

[3] This is within the range of a typical fee award in a common fund case. *See, e.g.,* Seghroughni v. Advantus Rest., Inc., 2015 WL 2255278 at *1 (M.D. Fla. 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases"); Wolff v. Cash 4 Titles, 2012 WL 5290155

conditioned on the award of attorney's fees, and explicitly states that it is to be considered separately from any application for attorney's fees. *See* **Exhibit A**.

### f.   Plaintiff's Non-FMWA Claims and Mutual General Release

In addition to his award under the allocation formula as a member of the putative class, Plaintiff will also receive payment in the amount of $12,500.00 to resolve his FLSA overtime claims and for a mutual general release ($3,000.00 to represent unpaid overtime wages, $3,000.00 to represent liquidated damages in connection to the overtime claim, and $6,500.00 as consideration for the mutual general release). *See* D.E. 48-1. Separate consideration paid to a class representative from the common fund in exchange for executing a general release is permissible under a Rule 23 analysis. *See, e.g.,* Teahl v. Lazy Flamingo, Inc., 2016 WL 4942067 (M.D. Fla. 2016) (Approving additional payment to class representative in FMWA class action settlement from the common fund in exchange for class representative's execution of a general release).

## IV.   MEMORANDUM OF LAW

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving debts and uncertainties and preventing lawsuits." *See, e.g.,* In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1105 (5th Cir. 1977). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *See* Ferron, 2021 WL 2940240 at *4 *citing* Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); *see, also,* Colourpop Cosmetics, 2020 WL 5848620 at *3 ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements"). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.,* Ass'n for Disabled Americans, Inc. v. Amoco Oil

---

at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered a standard in a contingency fee agreement"); Willix v. Healthfirst, Inc., 2011 WL 754862 at *7 (E.D.N.Y. 2011) ("Class Counsel's request 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…'"); Hosier v. Mattress Firm, Inc., 2012 WL 2813960 at *4 (M.D. Fla. 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorney's fees and costs); Morefield v. NoteWorld, LLC, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as attorney's fees); Atkinson v. Wal-Mart Stores, Inc., 2011 WL 6846747 at *6 (M.D. Fla. 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees).

Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002). In evaluating a proposed class action settlement, "the district court may rely upon the judgment of experienced counsel for the parties." *See, e.g.,* Ferron, 2021 WL 2940240 at \*5 *citing* Colourpop Cosmetics, 2020 WL 5848620 at \*3. "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.* Under Fed. R. Civ. P. 23(e), before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. *See, e.g.,* Ferron v. Kraft Heinz Foods Co., 2021 WL 2940240 (S.D. Fla. 2021) (Ruiz, J.) (granting final approval of Rule 23 class settlement) *citing* Fed. R. Civ. P. 23(e).

Here, the issues in this case were disputed and the Settlement Agreement was negotiated at arm's length by experienced counsel, who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions. *See* **Exhibit A**. There was no fraud or collusion, and the Settlement Agreement was reached after the Parties were equipped with the size of the putative class and other pertinent discovery, in addition to detailed investigations conducted by both sides, including but not limited to, review of payroll documentation and multiple depositions of employees from the subject restaurant.

### a.   The Court May Properly Exercise Jurisdiction Over this Matter

The Parties stipulate that Your Honor has personal jurisdiction over Plaintiff, who is a party to the action, and over all members of the Settlement Class because they received the requisite best notice and due process. *See, e.g.,* Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985) *citing* Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950); Colourpop Cosmetics, 20220 WL 5848620 at \*4; *see, also,* **Exhibit A**.

### b.   Best Notice Practicable Was Provided to the Settlement Class

The Court's Preliminary Approval Order entered on August 3, 2022, approved the Notice procedure:

> The Court approves the proposed plan for giving Notice to the Settlement Class as fully described in the Settlement Agreement. The plan for giving Notice, in form, method, and content, fully complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and is due and sufficient notice to all persons in the Settlement Class. In addition, the Court finds that no notice other than that specifically identified in the Settlement Agreement is necessary in this action.

*See* D.E. 49, ¶8.

As set forth in the Islas Declaration, Simpluris: (a) printed and mailed the Notice of Settlement of Class Action, Exclusion Form and Objection Form ("Notice Packet"); (b) received undeliverable Notice Packets; (c) received and validated requests for exclusion; (d) answered questions from Class Members; and (e) e-mailed counsel with weekly reports. *See* **Exhibit B** at ¶ 3. If the settlement is approved Simpluris will also: (f) calculate individual settlement payments, distribute these funds, and tax-reporting following approval; (g) mail out settlement checks; and (h) perform any other tasks the Parties mutually agree or the Court orders Simpluris to do perform. *See* **Exhibit B** at ¶ 3. The Richards Declaration confirms that counsel received the weekly reports, and that the website www.tipsysettlement.com was created by Simpluris, and Notices and Claims Forms were sent to 58 identified Class Members, which informed Class Members of their rights, including the process to seek exclusion from the Settlement, object to the Settlement, and instructions on how to submit a proper and valid claims form as well as the deadlines associated with those actions. In total, 8 valid claims forms were submitted which constitutes a 13.79% participation rate. *See* **Exhibit A**; **Exhibit B**.

### c.  Class Notice was Reasonably Calculated to Inform Settlement Class Members of their Rights

In this case, the Notice provided to class members:

(1) Defined the Settlement Class;
(2) Described the release provided to Defendants under the Settlement;
(3) Described the amount and proposed distribution of Settlement proceeds;
(4) Informed Settlement Class Members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing;
(5) Notified Settlement Class Members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Settlement Agreement, as well as other important documents; and
(6) Notified Settlement Class Members that class counsel intends to seek attorney's fees and expenses of up to $100,833.33.

*See* D.E. 48-1.

The notice procedure satisfied due process requirements because it described "the substantive claims… and contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *See* Colourpop Cosmetics, 2020 WL 5848620 at *4.

The Settlement Website created by Simpluris provided continuing notice and access to important documents filed in the case, including the Settlement Agreement, Court Orders, and

other documents regarding the Final Approval Hearing. Moreover, the settlement was properly publicized, and the notice reached 94% of the Class Members (i.e. 54 of the 58 Class Members). *See* **Exhibit A**; *see, also,* **Exhibit B** at ¶ 8 ("there were four (4) Class Notices that were undeliverable"). Any member of the Settlement Class who wished to express comments or objections had ample opportunity to do so. Despite that opportunity, there was only one (1) single opt-out from the entire class and not a single objection to the terms of the settlement. *Id.*

(d)     <u>**Settlement Obtained on Behalf of the Class is Reasonable**</u>

When reviewing a class settlement, "the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members receive as much from a settlement as they might have recovered from victory at trial." *See, e.g.,* <u>Colourpop Cosmetics</u>, 2020 WL 5848620 at *5. The Eleventh Circuit has also instructed district courts to consider several factors – often referred to as the <u>Bennett</u> factors. The <u>Bennett</u> factors include:

(1) the likelihood of success at trial;
(2) the range of possible recovery;
(3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
(4) the complexity, expense, and duration of litigation;
(5) the substance and amount of opposition to the settlement; and
(6) the stage of proceedings at which the settlement was achieved.

*See* <u>Bennett</u>, 737 f.2d at 986.

(i)     **There is No Evidence of Fraud or Collusion**

Defendants at all times aggressively disputed the claims in this case and the Parties only reached agreement after weeks of discovery and several days of negotiations. *See* **Exhibit A**. The Parties attended an early settlement conference with Magistrate Judge Strauss and were unable to resolve the claims at that early stage of the proceedings given the Parties' respective positions. *Id.* The Parties then engaged in discovery prior to extensive negotiations concerning the relief obtained in this case. *See* **Exhibit A**. Accordingly, there was no fraud or collusion in reaching the terms of this settlement.

(ii)     **Likelihood of Success in Litigation**

Beginning as early as the pre-suit stage of this claim, the Defendants disputed Plaintiff's allegations and denied all liability and wrongdoing. *See* **Exhibit A**. Class certification issues in this case would have been hotly contested. Defendants could have argued, among other things, that Plaintiff failed to satisfy numerosity requirements for purposes of the 4-year limitations period

10

under the Florida Minimum Wage Act. This argument would have posed a significant hurdle to Plaintiff achieving class certification. Continuing this action present several litigation hurdles, including, but not limited to, class certification, summary judgment briefing, trial, and potential appellate review following a final judgment. The Settlement secured significant monetary relief for the Class. Importantly, each Class member could have received $25 for every single week worked at the restaurant within the past 5 years. This equates to over 8 hours of recovery of the full $3.02 tip credit for each class member for each week worked at Tipsy Boar. This settlement avoids risk that Class Members would have possibly not obtained anything if case was decided on summary judgment or at trial in favor of Defendants. *See, e.g.,* Haynes v. Shoney's, 1993 WL 19915 at *6 (N.D. Fla. 1993) ("The risks for all parties should this case go to trial would be substantial… It is possible that trial on the merits would result in… no relief for the class members… Based on… the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement… is a fair and reasonable compromise").

### (iii)    Fairness, Adequacy, and Reasonableness of Settlement

In determining whether the settlement is fair in comparison to the potential range of recovery, the Court is guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *See* Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 542 (S.D. Fla. 1988); *see, also,* Williams v. Reckitt Benckiser LLC, 2021 WL 8129371 at *20 (S.D. Fla. 2021) (Goodman, M.J.). Courts regularly find settlements to be fair even where "plaintiffs have not received the optimal relief." *See, e.g.,* Warren v. City of Tampa, 693 F.Supp. 1051, 1059 (M.D. Fla. 1988).

Here, without deducting any amounts for attorney's fees, expenses, administration costs, or individual consideration, the $295,000.00 common fund yields a maximum of $5,086.20 for each Class Member. *See* **Exhibit A**. After these aforementioned amounts are deducted, the remaining amount still provides a maximum recovery of $2,500 for each Class Member. The allocation formula allows each Class Member to receive $25 for every single week worked at Tipsy Boar during the applicable 5-year period with a ceiling of $2,500.00. *See, e.g.,* Williams, 2021 WL 8129371 at *20 *citing* Hall, 2014 WL 7184039 at *6 ("There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment"); *see, also,* Poertner v. Gillette Co., 618 F. App'x 624 (11th Cir. 2015); Beber, et. al. v. Branch Banking & Trust Co., et. al., S.D. Fla. Case No. 15-cv-23294, ECF No. 109 (S.D. Fla. 2017) (approving

class settlement with payment percentages of damages of 10%, 8%, and 5%); In Re Checking Account Overdraft Litig., 830 F.Supp.2d 1330, 1346 (S.D. Fla. 2011) (range 9% to 45% of damages was an "exemplary" result).[4] The relief obtained for the class is reasonable under the circumstances. *See, e.g.,* Segroughni v. Advantus Restaurant, Inc., M.D. Fla. Case No. 8:12-cv-02000-SDM-TBM (granting final approval to class comprised of 87 restaurant servers where common fund yielded an average award of $2,294.12 for each class member).

**(iv)     Complexity, Expense, and Duration of Litigation**

The length of time it would take to obtain relief on behalf of a class is a key factor to consider in evaluating the reasonableness of a class settlement. *See* Ferron, 2021 WL 2940240. The immediate benefit provided by a class settlement – compared to the time require to litigate class actions involving complex claims and defenses – weighs in favor of deeming a settlement fair, reasonable, and adequate. *Id. citing* Colourpop Cosmetics, 2020 WL 5848620 at *5.

Both sides in this case have been vigorously represented by experienced and competent counsel. *See* **Exhibit A**. The cost of conducting additional discovery would be substantial and would delay any recovery sought by the class. In light of the uncertainty as to the merits and timing of payment (if any) the settlement represents a fair compromise of claims. *See, e.g.,* Bennett v. Behring Corp., 96 F.R.D. 343, 349-50 (S.D. Fla. 1982).

**(v)     Lack of Opposition to the Settlement, Opinions of Class Counsel, Plaintiff, and Absent Settlement Class Members**

Not a single class member objected to the terms of the class settlement. *See* **Exhibit A**. This supports the reasonableness of the settlement. *See, e.g.,* Ferron, 2021 WL 2940240 ("The lack of opposition weighs strongly in favor of the Court's approval of the Agreement… A low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable") *citing* Braynen v. Nationstar Mortg., LLC, et. al., 2015 WL 6872519 at *6 (S.D. Fla. 2015); *see, also,* Burrows v. Purchasing Power, LLC, 2013 WL 10167232 at *7 (S.D. Fla. 2013) ("No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition"). Moreover, class

---

[4] For a server who worked an average of 30 hours per week, for 52 weeks per year, for the entire 5-year limitations period, the absolute maximum that individual could recover based on the $3.02 tip credit, is $23,556.00. The $2,500.00 maximum recovery constitutes a more than 10% recovery and is therefore an "exemplary" result. *See* In Re Checking Account Overdraft Litig., 830 F.Supp.3d at 1346.

counsel believes this is a fair and adequate settlement for the class in light of the circumstances surrounding the litigation. *See* **Exhibit A**; *see, also,* <u>Ferron</u>, 2021 WL 2940240 ("the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation'"). During the Notice Period, there was a greater than 13% participation rate based on the valid claims forms received by the Claims Administrator. *See* **Exhibit A**; **Exhibit B**; *see, also,* <u>Lipuma v. American Express Co.</u>, 406 F.Supp.2d 1298, 1310 (S.D. Fla. 2005) (Altonaga, J.) (Granting final approval of class settlement where there was a 9.4% participation rate and 41 objections). Finally, Plaintiff is particularly pleased with the recovery, and only 1 individual member of the settlement class has opted out of settlement. *See* **Exhibit A**.

(vi)   <b>Stage at Which Settlement Was Achieved</b>

Class counsel conducted pre-suit investigations, which included pre-suit discussions with defense counsel, participated in a Court supervised settlement conference, and then obtained necessary discovery throughout the litigation of this case in order to make a reasoned judgment concerning the class settlement. *See* **Exhibit A**. Accordingly, class counsel had an "appropriate appreciation of the merits of the case before negotiating." *See, e.g.,* <u>Ferron</u>, 2021 WL 2940240 *citing* <u>Colourpop Cosmetics</u>, 2020 WL 5848620 at *5. Even though this settlement was reached slightly less than 6 months after the filing of the case, "early settlements are to be encouraged and only some reasonable amount of discovery should be required to make these determinations." *Id. citing* <u>Ressler v. Jacobson</u>, 822 F.Supp. 1551, 1554 (M.D. Fla. 1992).

e.   <u><b>Rule 23 Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23</b></u>

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g.,* <u>Morefield v. NoteWorld, LLC</u>, 2012 WL 1355573 at *2 (S.D. Ga. 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[5] The Court previously granted preliminary approval and class certification. *See* D.E. 49. Thus, the Court should grant final certification of the settlement class.

---

[5] Federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g.,* <u>Kubiak v. S.W. Cowboy, Inc.</u>, 2014 WL 2625181 (M.D. Fla. 2014) (certifying opt-out Rule 23 class for FMWA claims); <u>Lopez v. Hayes Robertson Group, Inc.</u>, 2013 WL 10561294 (S.D. Fla. 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); <u>Garcia-Celestino v. Ruiz Harvesting, Inc.</u>, 280 F.R.D.

13

### i. Numerosity

Here, there were 58 members of the settlement class of Servers. For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met. *See* Kilgo v. Bowman Trans., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members); Seghroughni, 2015 WL 390329 (numerosity satisfied based on 87 class members); Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013) ("less than twenty-one is inadequate, more than forty is adequate, with numbers between varying according to the other factors").

### ii. Commonality

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *See, e.g.*, Williams v. Mohawk Industries, Inc., 568 F.3d 1350, 1355 (11th Cir. 2009); Fabricant v. Sears Roebuck, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendants' class-wide pay policies and practices relating to whether the proper notice and amounts related to the reduced Florida wage was paid to Servers – an issue that is common to the entire Settlement Class.

### iii. Typicality

The Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pray policies and practices of Defendants, arise from the same legal theories, and allege the same type of harm and entitlement to relief. Therefore, Rule 23(a)(3) is satisfied. *See, e.g.*, Komberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984 (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### iv. Adequacy

---

640 (M.D. Fla. 2012) (certifying Florida state wage and hour claims); Rosario-Guerro v. Orange Blossom Harvesting, 265 F.R.D. 619 (M.D. Fla. 2010) (same); Napoles-Arcila v. Pero Family Farms, LLC, 2009 WL 1585970 (S.D. Fla. 2009) (same); Mesa v. Ag-Mart Produce, Inc., 2008 WL 2790224 (M.D. Fla. 2008) (same). Class certification is appropriate even in cases where certification of an opt-in collective action is denied.

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See* Fabricant, 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the settlement class, and Plaintiff has retained competent counsel to represent him and the settlement class. Class Counsel here regularly engages in wage and hour class litigation in several states across the country and other complex litigation similar to the present Litigation and have dedicated substantial resources to the prosecution of the Action. *See* **Exhibit A**. Further information concerning Class Counsel's credentials can be found in the Richards Declaration attached hereto. *Id.* Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation and have obtained a resolution that benefits all members of the putative class. *See* Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235, 1253 (11th Cir. 2000).

### v.        Predominance and Superiority

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 58 settlement Class Members in a single, coordinated proceeding is superior to 58 individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law… ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *See, e.g.,* Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1170 (11th Cir. 2010). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment. *See* In re Checking Account Overdraft Litig., 2012 WL 4173458 at *3 (S.D. Fla. 2012).

In sum, all of Rule 23's requirements are met for the purposes of granting final approval for the settlement class. Thus, the Court should grant final certification of the settlement class and approve the settlement.

### f.   Approval of the Settlement is Appropriate Under Federal Law

Plaintiff also requests that the Court approve the settlement of Plaintiff's FLSA claims. Unlike the procedure under Rule 23, individuals who seek to pursue claims under the FLSA must affirmatively opt into the litigation in order to join it. *See* Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See* Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *See* Lynn's Food Stores, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354. In this case, the settlement for Plaintiff's FLSA claims and consideration for release of non-FMWA claims was reached as a result of litigation and arm's-length negotiation involving vigorous back and forth. *See* **Exhibit A**. Notably, under the terms of the settlement agreement, only Plaintiff is waiving FLSA-related claims. *See* D.E. 48-1. None of the Rule 23 class members are waiving any FLSA claims. *See* D.E. 48-1. During the litigation Plaintiff and Defendants were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute in contested litigation, and was resolved through arm's-length settlement negotiations, it should be approved.

**V.     CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final approval of the class settlement, certify the settlement class, and enter the Proposed Order attached hereto.

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

Pursuant to S.D. Fla. L.R. 7.1(a)(3), prior to the filing of the instant motion, the Parties conferred and agree as to the relief sought herein.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS - JORDAN RICHARDS**, PLLC
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
(954) 871-0050
*Counsel for Plaintiffs*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE

16

Florida Bar No. 108372
*jordan@jordanrichardspllc.com*
*jake@jordanrichardspllc.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 1st day

of December 2022 and served on the counsel listed below.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST

**SCOTT MAGER, ESQ.**
Florida Bar No. 768502
2719 Hollywood Blvd. 2nd Floor
Hollywood, Florida 33020
brian@mpjustice.com
scott@mpjustice.com
*Counsel for Defendants*